T.C. Memo. 2004-40

UNITED STATES TAX COURT

ANTHONY J. AND DENISE D. SADBERRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10499-02.                    Filed February 18, 2004.

Anthony J. and Denise D. Sadberry, pro se.

R. Scott Shieldes, for respondent.

MEMORANDUM OPINION

COUVILLION, Special Trial Judge: Respondent determined a
deficiency of $22,255 in petitioners' Federal income tax and a
penalty of $4,433 under section 6662(a) for the year 1999.[1]

_____

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

After a concession by petitioners,[2] the issues for decision are: (1) Whether petitioners realized gross income under section 72 from two annuity distributions; (2) whether petitioners are liable for the 10-percent penalty on premature distributions from nonqualified annuities under section 72(q);[3] and (3) whether petitioners are liable for the 20-percent accuracy-related penalty for understatement of tax pursuant to section 6662(a). The Court decides the issues in this case on the preponderance of evidence in the record. Rule 142(a); sec. 7491.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Caldwell, Texas.

Anthony Sadberry (petitioner) was born in Caldwell, Texas, in 1949. During the year at issue, he was married to petitioner

---

[2] At trial, petitioners conceded unreported Form W-2, Wage and Tax Statement, wage and salary income of $602. Counsel for respondent stated that a Rule 155 computation would be necessary for self-employment taxes but did not elaborate on the adjustment or adjustments necessitating such computation. The Court, however, in this opinion, is allowing an adjustment to petitioners with respect to overreported income from a partnership that will necessitate a Rule 155 computation. See infra note 11.

[3] The 10-percent penalty was not a determination by respondent in the notice of deficiency. The issue arises from an amended Federal income tax return filed by petitioners for the year 1999 that reported such penalty as "other taxes" in the amount of $6,154.94, which petitioners now challenge.

Denise D. Sadberry, his wife of many years. Petitioner is an attorney, and Mrs. Sadberry is a homemaker. Petitioners have one daughter, Andrea Joi Sadberry, who is also known as Savannah J. Spivey (Andrea). Petitioners own a ranch on the Brazos River in Caldwell, Texas, across the river from Texas A&M University.

Petitioner's education includes a bachelor's degree from the University of Texas at Austin and a law degree from Georgetown University Law Center at Washington, D.C. Upon receiving his law degree in 1975, petitioner was employed in the Office of the Attorney General for the State of Texas for 2 years. From 1977 until the date of trial, petitioner was engaged in the private practice of law at various firms in Houston and San Antonio, Texas. His area of practice is commercial litigation. Additionally, petitioner has served as a member of the Attorney Admissions Committee for the U.S. District Court for the Southern District of Texas. In 1993, petitioner received a gubernatorial appointment to the Texas Lottery Commission, on which he served as a commissioner until 2001. As an appointed State official, petitioner was required to and did file personal financial statements with the Texas Ethics Commission.

When petitioner commenced law practice, most firms did not have retirements plans. Petitioner undertook his own financial and retirement planning, which he continued throughout his career. Initially, he invested primarily in certificates of

deposit (regular CDs).  Later, some of his CDs were converted into or purchased as individual retirement accounts (IRA CDs). To the extent pertinent to the issues before the Court, petitioner's retirement planning transactions are described below in greater detail.

In 1993, petitioner became a name partner in the law firm of Oldenettel & Sadberry.  His partner was Rick Oldenettel.  The law firm had a qualified section 401(k) retirement plan in which petitioner participated.  The firm accountant was Dan Wendel, from whom petitioner sought informal personal tax and retirement advice from time to time during his tenure with the law firm and thereafter.

During 1996, petitioner purchased a number of annuities.  In May, he purchased a nonqualified annuity from Glenbrook Life and Annuity with proceeds he received from the settlement of a lawsuit (Glenbrook nonqualified annuity).[4]  In June, he purchased a second nonqualified annuity from Southern Farm Bureau Life Insurance Co., funded with an initial contribution of petitioner's regular CDs (SFB nonqualified annuity).[5]  In

---

[4]    Glenbrook Life and Annuity, Flexible Premium Deferred Annuity Contract, policy number GA295240.  Petitioner did not elect to include the Glenbrook annuity as a qualified retirement plan under sec. 401(a) or 4974(c)(1), nor did it qualify as an annuity plan under secs. 403(a) and 4974(c)(2).

[5]    Southern Farm Bureau Life Insurance Co., Flexible
(continued...)

August, he purchased another annuity, a qualified annuity, from Southern Farm Bureau Life Insurance Co., funded with an initial contribution of petitioner's IRA CDs.[6]

In August 1996, petitioner left the Oldenettel & Sadberry firm to join the law firm of Soules & Wallace in San Antonio. Soules & Wallace did not have a section 401(k) retirement plan, and that motivated petitioner to engage in an additional retirement planning transaction based on the advice of the accountant for his former law firm, Mr. Wendel. Because of his understanding that a simplified employee pension (SEP) plan allowed for greater funding than an IRA, petitioner purchased an SEP plan late in 1996.[7] However, he became concerned about possible tax consequences of participating in a 401(k) plan and an SEP plan in the same year. He therefore terminated the SEP plan and deposited the funds from the SEP into the SFB nonqualified annuity, again with the advice of Mr. Wendel.

---

[5](...continued)
Premium Retirement Annuity, policy number 185128F. Petitioner likewise did not elect to include this annuity as a qualified retirement plan.

[6] Southern Farm Bureau Life Insurance Co., Flexible Premium Retirement Annuity, policy number 186618F. Petitioner elected to include this annuity as part of a qualified retirement plan.

[7] Southern Farm Bureau, Flexible Premium Retirement Annuity, policy number 200288F. A SEP, as defined under sec. 408(k), is a qualified plan.

Petitioner's affiliation with the San Antonio firm of Soules & Wallace continued until 1997, when he became self-employed again and resumed practicing law in Houston. In November 1997, petitioner purchased a new SEP plan from Southern Farm Bureau. Some time thereafter, he became associated as "Of Counsel" with the law firm of Wickliff & Hall, P.C., in Houston. He was employed there during the year at issue, 1999.

In addition to planning for retirement, a principal factor that influenced petitioner's financial decisions was the education of his daughter, Andrea. Initially, through her experience with horses on petitioners' ranch, Andrea had intended to enroll at Texas A&M University. However, she was also an accomplished flutist at an early age. While attending the High School for Performing and Visual Arts (HSPVA) in Houston, she decided to pursue musical rather than agricultural endeavors. Petitioner accompanied Andrea to auditions at various conservatories, including Julliard in New York City, Oberlin College in Ohio, Curtis Institute in Philadelphia, and the Eastman School of Music (Eastman) in Rochester, New York. Travel, private instruction, and other expenses were incurred in connection with these auditions. Andrea was accepted and decided to enroll in Eastman.

Petitioner realized that Andrea's musical studies would cost significantly more than a Texas A&M degree, which he had

originally anticipated and budgeted.  In part to finance Andrea's education, he requested and received sizeable distributions from the Glenbrook nonqualified annuity and the SFB nonqualified annuity during 1999.  He knew that portions of these distributions would be taxable and attempted to anticipate his tax obligations and Andrea's future expenses through withholdings, advance planning, and record keeping.  Petitioner made the decisions regarding the distributions himself and did not seek or receive tax advice regarding them.

On January 21, 1999, petitioner requested a distribution of $330,000 from the SFB nonqualified annuity (SFB distribution). He requested that Southern Farm Bureau withhold 10 percent of the gross distribution, or $33,000, for Federal income taxes. Petitioner explained why he requested that the withholding be calculated from the gross amount of the distribution, rather than from the taxable portion, as he testified:

> to be safe.  I knew enough to know that only a certain amount of it was going to be taxable * * *.  And I said, Well, $33,000 ought to cover it * * *.  I was getting a certain amount of money in the IRS' hands, in case I'm wrong about this whole thing.

On January 30, 1999, Southern Farm Bureau issued a check to petitioner in the net amount of $297,000, after withholding $33,000 income taxes.  With these funds, petitioner purchased a

CD in the amount of $247,000.[8]  Petitioner retained the remaining $50,000 in his personal checking account in anticipation of expenses to accompany Andrea to her auditions.  The SFB distribution was reported to petitioners on Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.  The taxable portion of the distribution on the Form 1099-R was $48,856.87.

Petitioner also requested four distributions from the Glenbrook nonqualified annuity during 1999 (Glenbrook distributions).  These distributions totaled $76,408.13. Petitioner requested that Glenbrook withhold 10 percent of the taxable portions of the distributions, or $1,269.25, for Federal income tax purposes.  Those distributions, like the Southern Farm Bureau distribution, were reported to the Internal Revenue Service and to petitioners on Forms 1099-R.  The taxable amount of the Glenbrook distributions was $12,692.51.  Thus, the taxable distributions from the Southern Farm Bureau and Glenbrook nonqualified annuities totaled $61,549.38, and the total income tax withholdings from both payers was $34,265.26.

---

[8]  Citizens State Bank, CD No. 17140, dated Feb. 3, 1999. Petitioner purchased the CD in the name of "Anthony J. Sadberry/Trust, Anthony J. Sadberry, Trustee," but under his own personal Social Security number.  He later assigned these funds to a properly formed trust with its own taxpayer identification number, as will be further explained.

To further achieve his financial goals, petitioner formed Anthony Sadberry Family Trust No. 1 (the Trust) in 1999 to finance Andrea's education and provide for her in the event of his death or incapacity.  The Trust was assigned its own tax identification number in March 1999 and was funded in part by the net proceeds of the SFB distributions.[9]  In June 1999, petitioner withdrew $28,988 from the Trust.  He deposited that amount into his personal checking account and then issued a check for that amount to Eastman for Andrea's tuition for the 1999-2000 academic year.  Petitioner also paid for Andrea's travel to Hawaii in July 1999 to attend a flute class not associated with Eastman but recommended by her upcoming professor at Eastman.  After Andrea enrolled at Eastman, petitioner withdrew additional funds from the Trust to pay for her living expenses, clothing, a computer, rent, and flights to and from school.  As trustee of the Trust, he filed Form 1041, U.S. Income Tax Return for Estates and Trusts, timely for 1999.[10]

During 1999, petitioner was approached by officials at Georgetown University Law Center (Georgetown) to contribute to the school's African-American Scholarship Endowment.  Since he

---

[9]     Petitioner assigned CD No. 17140, which he had purchased after receiving the SFB distribution, to the Trust on Apr. 6, 1999.

[10]     The Trust return reported $6,909.05 in income, all of which was interest, and a tax of $1,704.05.

had attended Georgetown on a disadvantaged student scholarship, he decided to honor the school's request.  By letter dated November 19, 1999, he informed Georgetown that he would make a commitment of $25,000 to the endowment.  An Endowed Fund Agreement with Georgetown was executed in March 2000 wherein petitioner agreed to pay $5,000 per year toward his commitment. The first pledge payment was made in January 2000.  Petitioner agreed that this pledge would be a debt of his estate.

Petitioners filed a joint, self-prepared Federal income tax return timely for 1999 (original return) on which they reported the following income:

| | |
|---|---|
| Salaries & wages | $145,675.15 |
| Taxable interest income | 577.97 |
| Unemployment compensation | 5,594.00 |
| Other income (Form 1099) | 3,396.60 |
| Total income | $155,243.72 |

No income was reported on Line 16a of the return for pension and annuity income.  The return shows an income tax liability of $34,538.64, Federal income taxes withheld of $35,524.89, and an overpayment of $986.26, which was in due course refunded to petitioners.  The $35,524.89 in taxes withheld did not include the taxes withheld in the SFB and Glenbrook annuity distributions earlier described.  Lines 50 through 56 of the tax return, Form 1040, is for "other taxes"; Line 53 is for "Tax on IRAs and other retirement plans."  Petitioners did not report any amount on Line

53 but instead wrote in the space: "See note attached." Two pages of handwritten notes were attached to the return. The first page referenced line 53 and stated: "The required 10% IRS withholding was made as to Glenbrook Life & Annuity--see Form 1099-R attached." The second page referenced the Trust and stated: "See attached Form 1099-R for Southern Farm Bureau Life Insurance Company–10% IRS withholding occurred--These funds were placed in the Trust and/or were used for the Trust purposes." Petitioner believed he was following the instructions to Form 1040 in not listing the taxable portions of the distributions as income on line 16 (IRA distributions) and the 10-percent tax for early distributions on line 53 (tax on IRAs, etc.). He believed that the attached notes would satisfy those two lines on the return. He believed that placing a portion of the proceeds from the Southern Farm Bureau distribution into a trust constituted a rollover, and that, if he were in error in that assumption, the IRS would correct it.

On April 25, 2000, petitioner signed a notarized personal financial statement for 1999, which he filed with the Texas Ethics Commission as required of him as a member of the Texas Lottery Commission. He listed on that report the Southern Farm Bureau and Glenbrook distributions, including the gross and taxable portions of the distributions.

In August 2000, petitioners filed Form 1040X, Amended U.S.
Individual Income Tax Return, for 1999 (amended return).  As was
the case with their original return, petitioners did not seek
advice or assistance with respect to this amended return.  On
line 9 of the amended return, Other taxes, petitioners reported
$6,154.94 as a 10-percent penalty on the Southern Farm Bureau and
Glenbrook distributions, which they referred to in Part II of the
amended return, Explanation of changes to income, deductions and
credits.  In addition, petitioners increased their withholding
credit to $69,794.14, to include the taxes withheld on the SFB
and Glenbrook distributions.[11]  Petitioners did not include the
taxable portion of the SFB and Glenbrook distributions as income
on the amended return.  Petitioners calculated and claimed a tax
overpayment of $27,753.13.  Respondent refunded the claimed
overpayment with interest (second refund), and the refund was
contributed by petitioner to the SFB nonqualified annuity on or

---

[11] Additionally, on line 1 of the amended return,
petitioners reported partnership income of $1,088 that was not
reported on the original return.  Petitioners attached Schedule
K-1, Partner's Share of Income, Credits, Deductions, etc., which
reflected partnership distributions to petitioner during 1999 of
$1,088.  The Schedule K-1, however, reflected net income
attributable to petitioner of $476 and interest income of $168.
It is apparent, therefore, that petitioners erroneously reported
$1,088 as partnership income when, instead, petitioners should
have reported net partnership income of $476 and interest income
of $168.  A Rule 155 computation will be necessary to correct
this error and to include any self-employment tax that may be due
on such income.  See supra note 2.

before October 31, 2000.  Petitioner merely endorsed the check over to Southern Farm Bureau.

In the notice of deficiency and accompanying explanations, respondent determined that petitioners failed to include on their original and amended returns the taxable annuity proceeds of $61,548.[12]  Respondent adhered to the $6,154.94 penalty that petitioners self-assessed on their amended return for the $61,549.38 taxable portion of early distributions by Southern Farm Bureau and Glenbrook.  Respondent included the previously unreported SFB and Glenbrook distributions as gross income, determined that self-employment tax was due, and allowed a corresponding deduction for one-half of such tax.  Respondent reduced petitioners' exemptions deduction under section 151(d) because of adjusted gross income greater than $189,950.  Finally, respondent determined that a 20-percent accuracy-related penalty was due for substantial understatement of tax under section 6662(a).

The first issue is whether petitioners received taxable annuity proceeds of $61,548.  Section 61(a)(9) provides that

---

[12]     The combined amount of taxable annuity proceeds reported on Forms 1099-R by Southern Farm Bureau and Glenbrook is actually $61,549.38.  Respondent admitted a $1.38 error in petitioners' favor on the amount of annuity proceeds includable as income and did not seek an increased deficiency.

gross income includes income from annuities, and that principle is reiterated in section 72(a):

> Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

Petitioners do not deny having received the distributions in question and do not dispute the Glenbrook and Southern Farm Bureau allocations between the taxable and nontaxable portions of the distributions as reported on Forms 1099-R. Petitioner reported the same allocations on his financial disclosure forms filed with the Texas Ethics Commission.

Nevertheless, petitioners disagree with respondent's determination that $61,548 should be taxed. First, they contend that the distributions of SFB and Glenbrook were rolled over. They argue that a partial rollover occurred when petitioners' second refund from the IRS of $27,753.13, plus interest, was received and transferred over to the SFB nonqualified annuity.[13] They argue that the date of their actual receipt of the second refund from the IRS, rather than the date of the SFB

---

[13] Petitioners initially argued that a partial rollover occurred when a portion of the net SFB distribution was invested in a CD held in trust for Andrea Sadberry. The record reflects that petitioners changed their position, and the Court considers this point conceded.

distribution, commenced the 60-day period in which to rollover that portion of the distribution.

The Court disagrees that a rollover occurred or could have occurred. A rollover occurs when distributions from certain qualified retirement plans are contributed or deposited into another qualified retirement plan within a 60-day time period. Secs. 402(c)(4), 403(a)(4), 403(b)(8), 408(d)(3)(A). All of the distributions petitioners received during 1999, including the SFB distribution, were from nonqualified plans. Therefore, no rollover could have occurred. Sec. 1.402(c)-2 Q&A-1, Q&A-2, Q&A-3, Income Tax Regs. Because of this conclusion, the Court need not address whether the timing requirements of a rollover were met or when those requirements began to run.

Secondly, petitioners argue that respondent is equitably estopped from contending that the SFB and Glenbrook distributions were not distributions that qualified for rollover treatment. In advancing this argument, petitioners claim to have detrimentally relied on the instructions to Form 1040 in reporting the tax consequences of their 1999 distributions. Specifically, petitioners cite page 24 of these instructions, which states: "A rollover is a tax-free distribution of cash or other assets from one retirement plan that is contributed to another plan." Petitioners interpret these instructions to mean that they could have rolled over their distributions and eliminated their

liability for the 10-percent penalty. They claim detrimental reliance in that had they known they would owe such tax, petitioner would have paid off the pledge to Georgetown University Law Center in full in 1999, and, in so doing, petitioners could have taken an itemized charitable contribution deduction for the $25,000 gift to Georgetown. Instead, they claimed the standard deduction on their 1999 return and lost the tax benefits of a charitable contribution they could have realized.

A more complete reading of the applicable instructions undercuts petitioners' argument. The instructions clearly state that they apply to rollovers from one <u>qualified</u> plan to another <u>qualified</u> plan.[14] Petitioners' SFB and Glenbrook nonqualified

---

[14] The instructions read, in pertinent part:

**Rollovers**

A rollover is a tax-free distribution of cash or other assets from one retirement plan that is contributed to another plan. Use lines 16a and 16b to report a rollover, including a direct rollover, from one qualified employer's plan to another or to an IRA or SEP.

Enter on line 16a the total distribution before income tax or other deductions were withheld. This amount should be shown in box 1 of **Form 1099-R**. From the total on line 16a, subtract any contributions (usually shown in box 5) that were taxable to you when made. From that result, subtract the amount that was rolled over either directly or within 60 days of receiving the distribution. Enter the remaining amount, even if zero, on line 16b. Also, put "Rollover" next to line 16b.

(continued...)

annuities were not qualified plans, and petitioners have never contended that their plans were qualified plans.  Moreover, equitable estoppel can be applied against the Government only when the following elements, at a minimum, are present:  (1) A false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts; (4) reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects of the acts or statement of the one against whom estoppel is claimed.  Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), modified 104 T.C. 417 (1995), affd. 140 F.3d 240 (4th Cir. 1998).  The doctrine is applied against the Government with the utmost

---

[14](...continued)
     Special rules apply to partial rollovers of property. For more details on rollovers, including distributions under qualified domestic relations orders, see Pub. 575.

**Lump-Sum Distributions**

     If you received a lump-sum distribution from a profit-sharing or retirement plan, your Form 1099-R should have the "Total distribution" box in box 2b checked.  You may owe an additional tax if you received an early distribution from a qualified retirement plan and the total amount was not rolled over.  For details, see the instructions for line 53 that begin on page 36.

     Enter the total distribution on line 16a and the taxable part on line 16b.

caution and restraint. Kronish v. Commissioner, 90 T.C. 684, 695 (1988).

Equitable estoppel does not apply in this case. Respondent made no misrepresentations or misleading silences to warrant estoppel. Even if the instructions to Form 1040 were misleading, and the Court declines to make such a finding, authoritative sources of Federal income tax law are statutes, regulations, and judicial decisions, not informal publications or instructions of the Internal Revenue Service. Casa de la Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990); Wenger v. Commissioner, T.C. Memo. 2000-156. Moreover, any error in the instructions was one of opinion or law, not fact. Here, petitioners knew all the facts and were not ignorant of them. They knew their plans were not qualified plans. If errors in reporting their 1999 taxes were made, it was petitioners who made them, not respondent. The elements of equitable estoppel are absent. The doctrine does not apply here. Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982).

The second issue is whether petitioners are liable for the 10-percent penalty on the Southern Farm Bureau and Glenbrook distributions under section 72(q). Section 72(q)(1) provides:

> Imposition of Penalty. If any taxpayer receives any amount under an annuity contract, the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent

of the portion of such amount which is includible in gross income.

Section 72(q)(2) provides a number of exceptions to the 10-percent penalty for premature distributions from annuity contracts.  These exceptions are similar, but not identical, to the exceptions provided under section 72(t) with respect to distributions from qualified retirement plans.  Petitioners argue that the Southern Farm Bureau and Glenbrook distributions are excepted from the 10-percent penalty because the distribution proceeds were used to pay qualified higher education expenses.  This exception, however, applies only to qualified plans.  Sec. 72(t)(2)(E).  There is no such exception for distributions from nonqualified plans.  As previously stated, petitioners' distributions in 1999 were solely from nonqualified plans.   The record is devoid of evidence that any of the section 72(q)(2) exceptions apply.  Respondent is sustained on this issue.

The final issue is whether petitioners are liable for the 20-percent accuracy-related penalty for substantial understatement pursuant to section 6662(a).  Section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  Sec. 6662(a), (b)(1) and (2).  There is an understatement where the amount of tax shown on the return is

less than the amount required to be shown on the return. An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000. Sec. 6662(d)(1) and (2).

An understatement may be reduced by the tax attributable to items (1) for which there is or was substantial authority, or (2) for which there was adequate disclosure of the facts relating to the tax treatment and a reasonable basis for the tax treatment. Sec. 6662(d)(2)(B); sec. 1.6662-4(b)(4), Income Tax Regs. Additionally, the accuracy-related penalty does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment and that he acted in good faith in view of the facts and circumstances. Sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer has the burden of proving that he acted with reasonable cause and in good faith. Higbee v. Commissioner, 116 T.C. 438, 446-449 (2001).

The Court finds that petitioners lacked substantial authority for their positions with respect to the distributions in question. The only circumstance petitioners cited was their reliance on instructions to Form 1040. The instructions, read in their entirety, do not support the interpretations of petitioners

with respect to their distributions.  For similar reasons, the Court finds that petitioners did not act with reasonable cause or basis for their positions.  Although the Court does not doubt that petitioners' intentions and errors were honest, the applicable authorities are sufficiently clear to preclude a finding of reasonable cause.  Petitioner's knowledge, education, and experience as an attorney should have motivated him to seek professional tax advice rather than to engage in guesswork with respect to his return.  The Court need not determine whether petitioners adequately disclosed the facts relating to their premature distributions or acted in good faith, because the other requirements for relief from the section 6662 substantial understatement penalty have not been met.

There is one additional factor to be considered in connection with this issue.  As noted earlier, the 20-percent accuracy-related penalty under section 6662(a) applies if the understatement of tax exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return.  Sec. 6662(d)(1).  The amount of tax required to be shown on the return will be reduced, albeit minimally, by other adjustments in the Rule 155 computation.  If the recalculated tax results in an amount satisfying section 6662(d)(1), the Court holds that

petitioners are liable for the substantial understatement penalty.

Decision will be entered under Rule 155.