United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 04-61160

)))))))))))))))))))))))))))

ANTHONY SADBERRY and DENISE SADBERRY,

Plaintiffs-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Defendant-Appellee.

Appeal from the United States Tax Court

Before GARWOOD, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Anthony Sadberry and Denise Sadberry (collectively, "Sadberry") appeal the Tax Court's decision in favor of Defendant-Appellee Commissioner of Internal Revenue ("Commissioner"). In 1999, Sadberry received a series of early distributions from annuities in order to fund his daughter's education. The parties do not dispute that $61,548 of the distributions were taxable.[1] However, Sadberry contends that the

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

[1] Sadberry does not dispute he received distributions that exceeded his initial investment in the retirement plans by

1

taxable distributions were eligible for a tax-free rollover, and that as a result, the $61,548 need not have been included in his income on his amended tax return.  In addition, Sadberry argues he is not liable for related tax penalties.  We disagree.

I

The standard of review for judgments of the Tax Court is the same standard we apply when reviewing other trial courts.  We review factual determinations for clear error and conclusions of law *de novo*.  *Dunn v. CIR*, 301 F.3d 339, 348 (5th Cir. 2002).

II

Only withdrawals from certain retirement plans are eligible for tax-free rollovers.  26 C.F.R. § 1.402(c)-2.  A tax-free rollover occurs when a distribution *from a qualified retirement plan* is deposited into another qualified retirement plan within a sixty-day time period.  *See generally id.;* 26 C.F.R. § 1.403(b)-2; 26 C.F.R. § 1.401(a)(31)-1; I.R.C. § 408(d)(3)(A).  The issue is whether the retirement plan from which Sadberry received an early distribution is a qualified retirement plan for purposes of a tax-free rollover.

Distributions from pension plans, profit-sharing plans, annuity plans, individual retirement accounts, and individual retirement annuities may qualify for a tax-free rollover if the

$61,548.

plans meet the definitions set out in the Internal Revenue Code.[2]
*See* I.R.C. §§ 402(c)(4),[3] 403(a)(4), 403(b)(8), 408(d)(3)(A).
Sadberry purchased a Flexible Premium Deferred Annuity Contract[4]
from Glenbrook Life and Annuity ("FPDAC") and multiple Flexible
Premium Retirement Annuity policies from Southern Farm Bureau
Life Insurance Co. ("FPRA").  On appeal, Sadberry primarily
disputes the Tax Court's determination that one FPRA,[5] and

_____

[2] Unless otherwise noted, all references to the Internal Revenue Code pertain to the 1999 version.

[3] Section 403(a)(4) references section 402(c)(4), which in 1999 stated:

> Eligible rollover distribution.--For purposes of this subsection, the term "eligible rollover distribution" means any distribution to an employee of all or any portion of the balance to the credit of the employee in a qualified trust; except that such term shall not include--
> (A) any distribution which is one of a series of substantially equal periodic payments (not less frequently than annually) made--
> (i) for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of the employee and the employee's designated beneficiary, or
> (ii) for a specified period of 10 years or more,
> (B) any distribution to the extent such distribution is required under section 401(a)(9), and
> (C) any hardship distribution described in section 401(k)(2)(B)(i)(IV).

[4] Glenbrook Life and Annuity, Flexible Premium Deferred Annuity Contract, policy number GA295240.

[5] Southern Farm Bureau Life Insurance Co., Flexible Premium Retirement Annuity, policy number 185128F.  The Tax Court found that Sadberry's other SFB annuities were in fact qualified for tax-free rollover treatment: Southern Farm Bureau Life Insurance Co., Flexible Premium Retirement Annuity, policy number 186618F and Southern Farm Bureau, Flexible Premium Retirement Annuity,

consequently an early distribution from that FPRA, was not qualified for a tax-free rollover.  He argues that the FPRA was qualified, or alternatively, that the record does not contain enough information to determine the status of this FPRA.  While the Tax Court determined that the FPRA in question was a nonqualified annuity, in Sadberry's brief, he refers to the FPRA as an "IRA," although he does not indicate whether he characterizes the FPRA as an individual retirement annuity or an individual retirement account.  Sadberry contends that the Tax Court made unjustified assumptions in concluding the FPRA was a nonqualified annuity.

A.

Because the Tax Court determined that the FPRA at issue was a nonqualified annuity and Southern Farm Bureau calls it an annuity,[6] we begin by assuming that the FPRA is an annuity. Operating under this assumption, we must decide whether the FPRA is one of the qualified annuities under the Internal Revenue Code: a qualified annuity under I.R.C. § 403(a) or a qualified individual retirement annuity under I.R.C. § 408(b).

In order to meet the requirements of a qualified annuity, the FPRA must fit the definition set out in I.R.C. § 403(a)(1).

policy number 200288F (an SEP as defined under I.R.C. § 408(k)).

[6] Although, the name of the plan has little bearing on its characterization under the Internal Revenue Code.

4

I.R.C. § 403(a)(4).[7]  Section 403(a)(1) defines a qualified annuity as a contract "purchased by an employer for an employee under a plan which meets the requirements of section 404(a)(2)." Section 404(a)(2) is entitled "Employees annuities'" and incorporates portions of section 401(a), which describes qualified pension, profit-sharing, and stock bonus plans.[8]  Thus, in order to meet the requirements of a qualified annuity, an employer must have created the FPRA for the benefit of his employees.[9]  Sadberry's employer did not set up the FPRA for Sadberry's benefit. Rather, Sadberry funded the FPRA with his own

---

[7] This paragraph states:

Rollover amounts.--
     (A) General rule.--If--
          (i) any portion of the balance to the credit of an employee in an employee annuity described in [section 403(a)(1)] is paid to him in an eligible rollover distribution (within the meaning of section 402(c)(4)),
          (ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
          (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.


[8] In general, qualified pension, profit-sharing, and stock bonus plans must be created by an employer for the benefit of his employees. *See* I.R.C. § 401(a).

[9] This is subject to certain exceptions set out section 401 that do not apply to Sadberry.

post-tax funds.  As a result, the FPRA is not a qualified
annuity.

We next assume the FPRA is an individual retirement annuity
and turn to whether the FPRA is qualified based on that
characterization.  Distributions from an individual retirement
annuity qualify for a tax-free rollover if the account meets the
definition in I.R.C. § 408(b).  *See* 408(d)(3)(A).  In 1999, to
qualify under this section, the FPRA must have limited the annual
contribution or premium to $2,000.  Because the FPRA at issue
does not limit its annual premiums, it does not qualify as an
individual retirement annuity according to the Internal Revenue
Code or for a tax-free rollover.  Under section 408(a), in 1999
an individual retirement account was subject to the same $2,000
limit.  Therefore, to the extent Sadberry argues the FPRA is an
individual retirement account, we conclude it was not qualified
for a tax-free rollover.

Having determined the FPRA is not a qualified annuity,
individual retirement annuity or individual retirement account,
we next assume the FPRA is a pension or profit-sharing plan.
Distributions from a pension or profit-sharing plan qualify for a
tax-free rollover if the pension or profit-sharing plan meets the
definition in I.R.C. § 401(a).[10]  Like a qualified annuity, under

----

[10] "Requirements for qualification.--A trust created or
organized in the United States and forming part of a stock bonus,
pension, or profit-sharing plan of an employer for the exclusive
benefit of his employees or their beneficiaries shall constitute

6

section 401(a), the plan must be created by an employer for the benefit of his employees.[11]  *See also* 26 C.F.R. §§ 1.401-1(a)(2), (b)(1)(i).  Retirement benefits of these plans are generally measured by factors such as years of service and compensation received by the employee.  26 C.F.R. §§ 1.401-1(b)(1)(i), (ii).  As we have explained, Sadberry's employer did not set up the FPRA for Sadberry's benefit; Sadberry funded the FPRA with his own post-tax funds.  In addition, the FPRA does not measure benefits by reference to Sadberry's years of employment or compensation.  Therefore, the Tax Court was correct in concluding that the FPRA at issue is not a qualified pension or profit sharing plan.

Since Sadberry is not a section 501 organization[12] and the FPRA at issue does not meet the Internal Revenue Code definition of a pension plan, profit-sharing plan, annuity plan, individual retirement account, or individual retirement annuity, the Tax Court correctly determined that the FPRA at issue was not eligible for a tax-free rollover.

Sadberry contends that the record regarding the FPRA is incomplete, and that the burden is on the Commissioner to ensure

a qualified trust under this section."  I.R.C. § 401(a).

[11] This is subject to certain exceptions set out section 401 that do not apply to Sadberry.

[12] Sections 402(c)(4) and 403(b)(8) apply to section 501 organizations, which include certain employer corporations and recreational clubs, public schools, etc. *See* I.R.C. §§ 402(a),(c); I.R.C. §§ 403(b)(1), (b)(8).

7

the necessary information is available.  However, the record contains enough information to exclude the FPRA from each category of qualified retirement plan.  Therefore, it is adequate for our purposes.  Even if the record did not contain enough information to determine the status of the FPRA, the taxpayer has the burden of proof in showing the Commissioner is wrong.  *See Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Affiliated Foods, Inc. v. CIR.*, 154 F.3d 527, 530 (5th Cir. 1998).  Sadberry has not met this burden because he has presented no evidence that the FPRA is qualified for a tax-free rollover under the Internal Revenue Code.

### B.

Sadberry also argues that the Commissioner is equitably estopped from claiming the FPRA distribution did not qualify for a tax-free rollover.  In order to claim equitable estoppel against the government, Sadberry must meet the requirements laid out in *Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 59-61 (1984). *See also Norfolk S. Corp. v. CIR*, 104 T.C. 13, 60 (1995), *modified*, 104 T.C. 417 (1995).  Equitable estoppel can be applied against the government only when (1) the government has made a false representation, (2) the false representation involves an error in a statement of fact and not in an opinion or statement of law, (3) the party claiming equitable estoppel is ignorant of the true facts and reasonably relies on the false

8

representation of the government, and (4) there are adverse effects due to the false representation. *Id.*

Sadberry maintains that the 1999 instructions for filling out a Form 1040 were misleading, and that he relied on these instructions in filing his taxes when he excluded the taxable distributions at issue from his income. However, as the Tax Court correctly concluded, the instructions designated for use in preparing 1999 returns were not misleading. *See, e.g.*, IRS, DEP'T OF THE TREASURY, PUBLICATION 575, PENSION AND ANNUITY INCOME 29 (1999) ("If you withdraw cash or other assets from a *qualified* retirement plan in an eligible rollover distribution, you can defer tax on the distribution by rolling it over to another *qualified* retirement plan.")(emphasis added); IRS, DEP'T OF THE TREASURY, PUBLICATION 590, INDIVIDUAL RETIREMENT ARRANGEMENTS (IRAS) 4, 14 (1999)("The trustee or custodian [of a qualified IRA] generally cannot accept contributions of more than $2,000 a year."). They clearly explain that only distributions from qualified plans are eligible for tax-free rollovers.[13]

---

[13] The 1999 instructions for lines 16a and 16b read in part:

Rollovers
A rollover is a tax-free distribution of cash or other assets from one retirement plan that is contributed to another plan. Use lines 16a and 16b to report a rollover, including a direct rollover, from *one qualified employer's plan* to another or to an IRA or SEP.

Enter on line 16a the total distribution before income tax or other deductions were withheld. This amount should

9

It is apparent from Sadberry's briefing, not that the instructions are ambiguous, but that Sadberry simply did not follow them.  Sadberry points to the instructions for line 15a and 15b, rather than the instructions for lines 16a and 16b. Sadberry contends that the instructions for lines 15a and 15b directed that he leave line 15b blank.  Due to the nature of the form, if line 15b is blank, the distribution in question would not be included in Sadberry's total income.[14]  As the argument

_____

be shown in box 1 of Form 1099-R. From the total on line 16a, subtract any contributions (usually shown in box 5) that were taxable to you when made. From that result, subtract the amount that was rolled over either directly or within 60 days of receiving the distribution. Enter the remaining amount, even if zero, on line 16b. Also, put "Rollover" next to line 16b.

Special rules apply to partial rollovers of property. For more details on rollovers, including distributions under qualified domestic relations orders, see Pub. 575.

Lump-Sum Distributions
If you received a lump-sum distribution from a profit-sharing or retirement plan, your Form 1099-R should have the "Total distribution" box in box 2b checked. You may owe an additional tax if you received an early distribution from a qualified retirement plan and the total amount was not rolled over. For details, see the instructions for line 53 that begin on page 36.

Enter the total distribution on line 16a and the taxable part on line 16b.
(emphasis added).

[14] This result occurs because Sadberry not only left line 15b blank, but he also did not consider line 16b relevant.  Therefore the taxable amount of the distribution in issue was not included in Sadberry's income as a taxable IRA distribution on line 15b nor was it included as a taxable pension or annuity distribution on line 16b.

goes, the Commissioner should therefore be estopped from claiming that distribution should have been included in Sadberry's gross income.

First, we agree with the Tax Court that, based on the 1999 Form 1040 instructions, the FPRA was not an IRA,[15] and that the instructions to line 16a and 16b are more relevant.[16] However, assuming the contrary, the instructions to lines 15a and 15b plainly indicate that a taxpayer should *only* refrain from reporting his total IRA distribution on line 15b if one of five distinctly numbered exceptions apply.[17] None of the five

_____

[15] The instructions define an IRA stating:

[A]n IRA includes a traditional IRA, Roth IRA, education (Ed) IRA, simplified employee pension (SEP) IRA, and a savings incentive match plan for employees (SIMPLE) IRA.

[16] Sadberry specifically elected not to include the FPRA in an IRA.

[17] The five exceptions are:

1. You made nondeductible contributions to any of your traditional or SEP IRAs for 1999 or an earlier year. Instead, use Form 8606 to figure the amount to enter on line 15b; enter the total distribution on line 15a. If you made nondeductible contributions to these IRAs for 1999, also see Pub. 590.

2. You converted part or all of a traditional, SEP, or SIMPLE IRA to a Roth IRA in 1999. Instead, use Form 8606 to figure the amount to enter on line 15b; enter the total distribution on line 15a.

3. You made an excess contribution in 1999 to your IRA and withdrew it during the period of January 1, 2000, through April 17, 2000. Enter the total distribution on line 15a and the taxable part (the earnings) on line 15b.

11

exceptions apply to Sadberry; thus, it is apparent that, according to the instructions, Sadberry should not have left line 15b blank.  In his brief, Sadberry groups together the instructions from two unrelated paragraphs.[18]  More specifically, he argues that the statement regarding a conduit IRA functions as one of the five exceptions.  Any cursory reading of the instructions establishes that is not the case.  Notwithstanding the standard confusion that confronts us all with respect to the IRS's tax forms, the 1999 Form 1040 instructions are unambiguous, and the Commissioner did not make any false representations.

Furthermore, to the extent Sadberry claims his "detriment is the inability to retain money that [he] should never have

---

4. You received a distribution from an Ed or Roth IRA and the total distribution was not rolled over into another IRA of the same type. Instead, use Form 8606 to figure the amount to enter on line 15b; enter the total distribution on line 15a.

5. You rolled your IRA distribution over into another IRA of the same type (for example, from one traditional IRA to another traditional IRA). Enter the total distribution on line 15a and put "Rollover" next to line 15b. If the total on line 15a was rolled over, enter zero on line 15b. If the total was not rolled over, enter the part not rolled over on line 15b. But if item 1 above also applies, use Form 8606 to figure the taxable part.

[18] In a separate paragraph the instructions for lines 15a and 15b state:

If you rolled over the distribution (a) in 2000 or (b) from a conduit IRA into a qualified plan, attach a statement explaining what you did.

12

received in the first place," this argument fails. *Heckler*, 467 U.S. at 61. Because Sadberry did not include the taxable annuity proceeds as part of his income on his 1999 tax returns and amended returns, the government refunded him money to which he was not entitled.[19] This cannot be the basis for estoppel against the government. *Id.*

Sadberry also alludes to statements IRS officials made during a settlement agreement with Sadberry as grounds for equitable estoppel. However, Sadberry has not shown he relied to his detriment on any alleged misrepresentations of fact during this meeting. As the Tax Court accurately held, the elements of equitable estoppel are absent here. *See Graff v. CIR*, 74 T.C. 743, 761-65 (1980).

C.

Section 6662 imposes a twenty percent penalty when a taxpayer substantially underreports his income on his tax return, measured against the amount of tax imposed on him by the Internal Revenue Code. I.R.C. §§ 6662(a), (b)(1),(b)(2). However, no penalty is imposed if the taxpayer shows he acted with reasonable cause and in good faith. 26 C.F.R. § 1.6664-4. "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into

---

[19] Unless an amount received as an annuity is rolled over, in general, it should be included in gross income. *See* I.R.C. §§ 61(a)(9), 72(a).

13

account all pertinent facts and circumstances." *Id.*  The Tax Court found that Sadberry substantially understated his income,[20] and without deciding whether he acted in good faith, held that Sadberry did not act with reasonable cause.   The Tax Court explained that based on Sadberry's knowledge, education, and experience as an attorney, in conjunction with the fact that the 1999 Form 1040 instructions did not support his position, Sadberry did not have reasonable cause to substantially understate his income.

There is not clear error in the Tax Court's finding that Sadberry failed to act with reasonable cause, given all the pertinent facts and circumstances.  *See* 26 C.F.R. § 1.6664-4; *Srivastava v. CIR*, 220 F.3d 353, 367 (5th Cir. 2000), *overruled on other grounds*, *CIR v. Banks*, 125 S. Ct. 826 (2005).  We also agree with the Tax Court that, because the FPRA was not a qualified plan and no exception applies, Sadberry is liable for

---

[20] Because he left line 15b blank, Sadberry understated his income by $22,094.51.  In his reply, Sadberry implies that the Tax Court decision is somehow inconsistent in concluding that Sadberry was both deficient in his 1999 income tax and that there was also an overpayment in his income tax for that year.  However, after a thorough review of the decision below and the parties' briefs, we conclude that no inconsistency is present.  Sadberry was deficient in his income tax because he misstated his income.  However, once the Commissioner determined there was a deficiency in Sadberry's income tax, Sadberry made payments to the IRS that exceeded the deficiency, resulting in an overpayment.  Despite this, Sadberry can still be liable for a section 6662 penalty for the misstatement of his income.

the section 72(q)[21] ten percent penalty for premature distributions from nonqualified plans.

## III

As we find that the FPRA was not a qualified pension plan, profit-sharing plan, annuity plan, individual retirement account, or individual retirement annuity, we are in agreement with the rulings of the Tax Court on the points brought forward to us: the FPRA premature distributions were not eligible for tax-free rollover treatment, Sadberry is liable for the ten percent penalty on the FPRA and FPDAC distributions under section 72(q), and Sadberry is also liable for the twenty percent penalty for a substantial understatement of income tax under section 6662. Sadberry has failed to show he acted with reasonable cause and in good faith with respect to his failure to report as income the taxable portion of the FPRA and FPDAC distributions. For the foregoing reasons, we AFFIRM the judgment of the Tax Court.

AFFIRMED.

---

[21] Section 72(q) provides for a 10 percent penalty for premature distributions from nonqualified annuity contracts.

15