T.C. Summary Opinion 2009-34


UNITED STATES TAX COURT


MICHAEL DAVID LIEBER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15703-07S.                Filed March 16, 2009.


Michael David Lieber, pro se.

Jeffrey D. Heiderscheit, for respondent.


JACOBS, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the

year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $4,031.10 deficiency in petitioner's Federal income tax for 2005. The deficiency arises from the imposition of the 10-percent penalty mandated by section 72(q)(1) for premature distributions from an annuity contract. Respondent asserts that the penalty is applicable because petitioner received distributions in 2005 from an annuity policy contract (annuity policy) that do not qualify for any of the exceptions set forth in section 72(q)(2). Petitioner asserts that the 10-percent penalty should not apply because the distributions were used for his college expenses.

### Background

The parties submitted this case fully stipulated, pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Texas.

In 1988, when petitioner was very young, his father died. At the date of his death, petitioner's father was the insured under a life insurance policy issued by Jackson National Life Insurance Co. of Texas (Jackson Life). A portion of the proceeds from that policy was used to purchase a single premium, nonqualified, deferred annuity policy for the benefit of

petitioner.  The annuity policy permitted partial withdrawals before the contract's maturity date of April 14, 2056.

In 2005 petitioner attended college in Texas.  Petitioner's mother (as the owner of the annuity policy) requested, and received on behalf of petitioner, as the annuitant, distributions from Jackson Life during 2005 totaling $40,310.80, which were used for petitioner's college expenses.[1]

## Discussion

Section 72(q)(1) imposes a 10-percent penalty on distributions from an annuity contract unless the distribution satisfies one of the exceptions set forth in section 72(q)(2); namely, distributions:[2]

(A) made on or after the date in which the taxpayer attains age 59-1/2;

---

[1]The annuity policy was purchased pursuant to the order of the District Court of El Paso County, Tex., 243rd Judicial District, dated Mar. 20, 1989.  The order was issued in response to a motion to invest funds of a minor, filed by T. Udell Moore, guardian ad litem, and Gail Lieber, natural mother and next friend, of Michael David Lieber, a minor.  Under the terms of the annuity policy, (1) Jackson Life agreed to pay the annuitant (Michael David Lieber), if living on the maturity date, a monthly income with 120 months certain, and (2) pursuant to the terms of the annuity policy, while the annuitant is living, the owner (Gail Lieber) may exercise all rights under the annuity policy subject to the interest of any assignee or irrevocable beneficiary.

[2]Sec. 72(q)(1) was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 265(b)(1), 96 Stat. 546, to discourage the use of annuity contracts as short-term tax sheltered investments for certain "premature" distributions.  See S. Rept. No. 97-494 (Vol. 1), at 349 (1982).

(B) made on or after the death of the holder;

(C) attributable to the taxpayer's becoming disabled;

(D) that are part of a series of substantially equal periodic payments;

(E) from certain qualified plans as described in section 72(e)(5)(D);

(F) allocable to investment in the contract before August 14, 1982;

(G) under a qualified funding asset (within the meaning of section 130(d), without regard to whether there is a qualified assignment);

(H) to which section 72(t) applies (without regard to paragraph (2) thereof);

(I) under an immediate annuity contract (within the meaning of section 72(u)(4));[3] or

(J) from an annuity purchased by an employer, under certain circumstances.

None of the section 72(q)(2) distribution exceptions is herein applicable. Nonetheless, petitioner contends that the higher education exception (section 72(t)(2)(E)), which applies to the penalty for early distributions from qualified retirement plans (section 72(t)(1)), should apply to distributions from annuity contracts since the title of section 72, "Annuities;

---

[3]The annuity policy involved herein would not qualify as an immediate annuity contract. Although it was purchased with a single premium, the annuity policy's starting date (the first day of the first period for which an amount is received as an annuity under the policy) was not within 1 year from the date of the purchase of the annuity policy, and it did not provide for a series of substantially equal periodic payments during the annuity period.

Certain Proceeds of Endowment and Life Insurance Contracts",
indicates that all of the section's provisions apply to
annuities. This argument fails inasmuch as it is well settled
that the heading of a section does not limit the plain meaning of
the text. See Bhd. of R.R. Trainmen v. Balt. & Ohio R.R., 331
U.S. 519, 528 (1947); Warren v. Commissioner, 114 T.C. 343, 347
(2000). The relevant text of section 72(q)(2) is clear; nothing
therein contains either: (1) An exception for higher education
expenses, or (2) a provision that the exception found in section
72(t)(2)(E) applies to the 10-percent penalty under section
72(q)(1).

Section 72(t)(2)(E) specifically limits its reach to the 10-
percent additional tax on distributions from qualified retirement
plans under section 72(t)(1), and we have held that the higher
education expense exception found in section 72(t)(2)(E) does not
apply to the section 72(q)(1) penalty for premature distributions
from annuity contracts. See Sadberry v. Commissioner, T.C. Memo.
2004-40, affd. 153 Fed. Appx. 336 (5th Cir. 2005).

Petitioner next makes an equitable argument; namely, that
the distributions he received in 2005 should not be subject to
the section 72(q)(1) penalty because: (1) The annuity policy was
purchased to provide funds for petitioner's college expenses and
therefore should be excepted from the section 72(q)(1) penalty by
section 72(t)(2)(E), and (2) petitioner's mother was informed by

her father (who was an insurance agent and who "worked with annuities") that there would be "no repercussions for early withdrawals if the funds were used solely for higher educational purposes." Moreover, petitioner asserts that the certified public accountant who prepared his 2005 tax return knew that the annuity policy had been purchased in order to provide funds for petitioner's educational expenses.

The equitable argument petitioner advances is not relevant. This Court, like all other courts, construes statutes as written; we do not enlarge them. We cannot create exceptions in order to reach what someone believes is an equitable outcome. See Iselin v. United States, 270 U.S. 245, 250 (1926); Pollock v. Commissioner, 132 T.C. __ (2009); Paxman v. Commissioner, 50 T.C. 567, 576-577 (1968), affd. 414 F.2d 265 (10th Cir. 1969). Moreover, we are mindful that a letter from Jackson Life dated September 26, 2007, informed petitioner:

> We have also researched how this policy should be qualified. Per the court order we have in our records it instructed us to issue a deferred annuity. The court order did not state that this should be issued as a retirement annuity or an educational annuity. Therefore, this policy was issued as a non-qualified annuity.

Finally, petitioner maintains that the annuity distributions are excepted from the 10-percent penalty by section 72(q)(2)(B), which provides that no penalty shall be imposed on any distribution made on or after the death of the holder of the annuity, because the annuity was funded by the proceeds from his

father's life insurance policy.  Again, we disagree with petitioner's assertion.  The distributions involved herein were not made on or after the death of the holder of the annuity policy.

We have considered all petitioner's arguments, and to the extent not discussed herein, we reject them as irrelevant and/or without merit.  We sustain the deficiency of $4,031.10 determined in respondent's notice of deficiency.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.