KENNETH P. GRISWOLD AND FLORINE GRISWOLD, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9370–84.    Filed November 26, 1985.

*Louis J. McCoy*, for the petitioners.
*John C. Schmittdiel*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined a deficiency of $3,787 in petitioners' 1980 Federal income tax. After concessions, the

sole issue is whether, under section 408(e)(3),[1] petitioner Kenneth P. Griswold's borrowing against an annuity contract during 1980 caused such contract to cease being an individual retirement annuity and required petitioners to include in their gross income for 1980 the fair market value thereof.

The facts have been fully stipulated and are so found.

Petitioners Kenneth P. Griswold and Florine Griswold are husband and wife. They resided in St. Paul, Minn., at the time they filed the petition herein.

During the year in issue, petitioner Kenneth P. Griswold (herein petitioner) was the owner of an annuity contract with John Hancock Mutual Life Insurance Co. (herein John Hancock). The fair market value of this contract as of January 1, 1980, was $6,866.

On July 1, 1980, petitioner obtained a loan from John Hancock by borrowing against the loan value of the annuity contract.[2] At the time of this borrowing, the annuity contract satisfied the requirements set forth in section 408(b), and thus was an individual retirement annuity within the meaning of that section. Petitioner had been advised by a representative of John Hancock that such borrowing was without income tax consequences so long as the loan was repaid. Petitioner repaid the loan in full prior to April 15, 1981.

In late June or early July of 1981, petitioner received a check from John Hancock in the amount of $8,510.27, representing the entire balance of his annuity contract. On July 21, 1981, petitioner reinvested the entire amount received from John Hancock with Delaware Charter Guaranty & Trust Co. through Piper, Jaffray & Hopwood, Inc.

In his notice of deficiency, respondent determined that, by reason of petitioner's borrowing against the individual retirement annuity contract, petitioners were required under section 408(e)(3) to include in their gross income for 1980 the sum of $6,866, representing the fair market value of such contract as of January 1, 1980. Respondent also made several other adjustments concerning petitioners' Federal income tax liability, as to which the parties have reached agreement. Thus, the sole remaining issue is whether, under section 408(e)(3),

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The record does not reflect the amount of this loan.

petitioner's borrowing against the annuity contract caused such contract to cease being an individual retirement annuity and required petitioners to include in gross income for 1980 the value of such contract as of January 1, 1980.[3]

Individual retirement annuities, like individual retirement accounts, are a form of tax-favored retirement savings arrangement.[4] The rules governing their taxability are generally contained in section 408. As relevant herein, section 408(d)(1) sets forth the general rule that amounts paid or distributed under an individual retirement annuity shall be included in gross income for the taxable year in which the payment or distribution is received. The owner of an individual retirement annuity thus is generally not taxed with respect thereto until amounts are received by him under the annuity contract. Cf. sec. 408(d)(1), sec. 1.408–4(a), Income Tax Regs.[5]

However, an exception to this general rule is contained in section 408(e)(3), which provides as follows:

(3) EFFECT OF BORROWING ON ANNUITY CONTRACT.—If during any taxable year the owner of an individual retirement annuity borrows any money under or by use of such contract, the contract ceases to be an individual retirement annuity as of the first day of such taxable year. Such owner shall include in gross income for such year an amount equal to the fair market value of such contract as of such first day.

Section 1.408–3, Income Tax Regs., sets forth rules pertaining to individual retirement annuities. Of particular relevance herein is section 1.408–3(c), Income Tax Regs., which provides as follows:

(c) DISQUALIFICATION.—If during any taxable year the owner of an annuity borrows any money under the annuity or endowment contract or by use of such contract (including, but not limited to, pledging the contract as security for any loan), such contract will cease to be an individual retirement annuity as of the first day of such taxable year, and will not be an individual

---

[3]We note that petitioners have not filed either an original brief or a reply brief in this case.

[4]The statutory provisions relating to individual retirement annuities and individual retirement accounts were first introduced with the enactment of the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829. See H. Rept. 93–807, at 126–127, 1974–3 C.B. (Supp.) 236, 361–362. Conf. Rept. 93–1280, at 335–336, 1974–3 C.B. 415, 496–497. See generally *Orzechowski v. Commissioner*, 69 T.C. 750, 752–753 (1978), affd. 592 F.d 677 (2d Cir. 1979). See also the discussion at note 6 and accompanying text, *infra*.

[5]See also H. Rept. 93–807, at 135 note 11, 1974–3 C.B. (Supp.) 236, 370 note 11, which indicates "As with annuities generally [sic] the owner of an individual retirement annuity is not to be currently taxed on the annual increased value of the annuity, but is taxed on receipt of annuity payments."

retirement annuity at any time thereafter. If an annuity or endowment contract which constitutes an individual retirement annuity is disqualified as a result of the preceding sentence, an amount equal to the fair market value of the contract as of the first day of the taxable year of the owner in which such contract is disqualified is deemed to be distributed to the owner. Such owner shall include in gross income for such year an amount equal to the fair market value of such contract as of such first day. The preceding sentence applies even though part of the fair market value of the individual retirement annuity as of the first day of the taxable year is attributable to excess contributions which may be returned tax-free under section 408(d)(4) or 408(d)(5).

Under the clear language of section 408(e)(3) and section 1.408–3(c), Income Tax Regs., the owner's borrowing under or by use of an individual retirement annuity is a disqualifying event having two distinct consequences. First, it causes the annuity contract to cease being an individual retirement annuity as of the first day of the taxable year in which such borrowing occurs. Thus, as of such date, the annuity contract ceases to be eligible for the favorable tax treatment generally accorded to individual retirement annuities. Second, an amount equal to the fair market value of such contract on the first day of the taxable year in which the borrowing occurs is deemed distributed to the owner, who is required to include such amount in gross income for such taxable year.

Application of these principles to the facts of the instant case requires a holding for respondent. During 1980, petitioner was the owner of an annuity contract with John Hancock. On July 1, 1980, petitioner obtained a loan from John Hancock by borrowing against the loan value of the annuity contract. At the time of such borrowing, the contract satisfied the requirements set forth in section 408(b) and thus was an individual retirement annuity within the meaning of that section. We conclude that the loan from John Hancock to petitioner was a borrowing under or by use of an individual retirement annuity. Accordingly, we hold under section 408(e)(3) that the borrowing caused petitioner's annuity contract to cease being an individual retirement annuity as of January 1, 1980, and that petitioners must include in their gross income for 1980 the sum of $6,866, representing the fair market value of the annuity contract with John Hancock as of January 1, 1980.

Our conclusion is supported not only by the express language of the statute and the regulations, but also by the

legislative history relating to the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829 (herein ERISA) as part of which section 408 was enacted into law. In adopting the individual retirement provisions of ERISA,[6] Congress' goal was to create a system whereby employees and self-employed persons not covered by qualified retirement plans would have the opportunity to set aside at least some retirement savings on a tax-sheltered basis. See H. Rept. 93–807, at 126, 1974–3 C.B. (Supp.) 236, 361; S. Rept. 93–383, at 131, 1974–3 C.B. (Supp.) 80, 210. Under the statutory framework thus established, individuals could obtain a deduction for amounts contributed to individual retirement accounts, individual retirement annuities and individual retirement bonds, and earnings on such amounts could accrue tax free. See secs. 219, 408, 409. See also H. Rept. 93–807, *supra* at 126–127, 1974–3 C.B. (Supp.) at 361–362; S. Rept. 93–383, *supra* at 130–131, 1974–3 C.B. (Supp.) at 210; *Orzechowski v. Commissioner*, 69 T.C. 750, 752–753 (1978), affd. 592 F.2d 677 (2d Cir. 1979).

In adopting this statutory framework, Congress intended that funds contributed to an individual retirement account, individual retirement annuity, or individual retirement bond be used for retirement purposes. Accordingly, it sought to discourage certain transactions which would circumvent this statutory purpose. See H. Rept. 93–807, *supra* at 127, 138, 1974–3 C.B. (Supp.) at 362, 373; cf. S. Rept. 93–383, *supra* at 134, 1974–3 C.B. (Supp.) at 213. One such transaction, which it sought to prevent by means of section 408(e)(3), was the borrowing under or by means of an individual retirement annuity. The House Ways and Means Committee described the consequences of such a borrowing as follows:

With respect to individual retirement annuities (which are nontransferable and cannot be hypothecated), the bill prohibits the owner of the contract from borrowing money from the insurance company issuing the contract, under or by use of the contract. If any prohibited borrowing occurs, (regardless of the amount involved) the contract is to lose its qualification as an individual retirement annuity as of the first day of the taxable year of the contract owner in which the borrowing occurs. In this case, the owner is to include in income for that year the fair market value (which may or may not

---

[6]See sec. 2002 of Pub. L. 93–406, 88 Stat. 958–971, which added secs. 219, 408, 409, 4973, 4974, and 6693.

be the same as the cash surrender value) of the contract as of the first day of that year. Since the owner's basis in the contract is to be zero the entire amount deemed distributed is to be taxable to him as ordinary income. * * * (If the annuity contract is sold, exchanged or hypothecated, in violation of its terms, it is intended that the same consequences will occur as with a prohibited borrowing from an insurance company.) [H. Rept. 93–807, *supra* at 136–137, 1974–3 C.B. (Supp.) at 236, 371–372. See also Conf. Rept. 93–1280, at 339, 1974–3 C.B. 415, 500.][7]

The foregoing excerpt from the legislative history of section 408(c)(3) makes it clear that petitioner's borrowing from John Hancock against his annuity contract was precisely the type of transaction which Congress sought to discourage by means of that statutory provision.

A contrary holding is not required by the parties' stipulation that petitioner received the balance of his annuity contract from John Hancock in July 1981 and reinvested the proceeds thereof within 60 days. It is true that under section 408(d), certain amounts paid under an individual retirement annuity will not be includable in gross income if they are, within 60 days of receipt, reinvested in a "rollover" transaction as prescribed in that section. See secs. 408(d)(1), 408(d)(3). However, petitioners can take no comfort in this section. First, the record does not establish that the reinvestment of the proceeds was made in the manner prescribed by section 408(d)(3). Furthermore, insofar as is relevant herein, section 408(d) applies only to amounts paid out of or distributed under an individual retirement annuity. See secs. 408(d)(1), 408(d)(3). We have held, however, that petitioner's borrowing against the annuity contract with John Hancock on July 1, 1980, caused such contract under section 408(e)(3) to cease being an individual retirement annuity as of January 1, 1980. Thus, after giving effect to section 408(e)(3), those statutory provisions which relate to individual retirement annuities, such as section 408(d), can have no application with respect to petitioner's annuity contract on or after January 1, 1980.

---

[7]While the legislation history does not expressly so indicate, it is inferable therefrom that a borrowing against an individual retirement annuity would frustrate the statutory purpose in that it would allow the owner to, in effect, have the use of the retirement funds prior to his retirement. Such a borrowing could leave the owner without funds for retirement, a result which Congress clearly sought to discourage. Cf. H. Rept. 93–807, *supra* at 138, 1974–3 C.B. (Supp.) at 373; S. Rept. 93–383, at 134, 1974–3 C.B. at 213.

Thus, we hold that under section 408(e)(3), petitioner's borrowing against the annuity contract with John Hancock during 1980 caused the contract to cease being an individual retirement annuity as of January 1, 1980. Under the provisions of that section, petitioners are required to include in their gross income for 1980 the sum of $6,866, representing the fair market value of such contract as of January 1, 1980.[8]

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

---

[8]Our holding is not affected by the fact that petitioner engaged in the borrowing herein in reliance upon the erroneous advice of a representative of John Hancock. By means of the clear language of sec. 408(e)(3), Congress has prescribed the consequences of a borrowing under or by use of an individual retirement annuity, and we must apply the law as so written.