**Ralph D. FURLONG and Jacqueline L. Furlong, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 93–3668.**

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1994.

Decided September 19, 1994.

Patrick B. Mathis (argued), Kevin J. Richter, Mathis, Marifian, Richter & Grandy, Belleville, IL, for petitioners-appellants.

Richard Farber, Gary R. Allen, Steven W. Parks, Thomas J. Clark (argued), Dept. of Justice, Tax Div. Appellate Section, Charles S. Casazza, U.S. Tax Court, Washington, DC, for respondent-appellee.

Before SPROUSE,\* COFFEY, and KANNE, Circuit Judges.

\* The Honorable James M. Sprouse of the Fourth Circuit is sitting by designation.

KANNE, Circuit Judge.

Ralph Furlong was the president and sole shareholder of Wire Industries, Inc., a corporation doing business in Illinois. Furlong was also a participant in Wire Industries' pension plan. On August 25, 1982, Furlong borrowed $99,000 from his pension plan. Furlong signed a promissory note, requiring him to repay the principal amount of the loan plus an initial interest rate of twelve percent per year. Furlong and his wife Jacqueline did not include the loan proceeds as taxable income on their 1982 joint income tax return.

On May 29, 1990, the Commissioner of Internal Revenue issued a Notice of Deficiency to the Furlongs detailing several increases to their income tax for the year 1982. Among other things, the Commissioner determined that the Furlongs should have included the proceeds of the $99,000 loan Ralph received from the Wire Industries pension plan in their gross income, pursuant to 26 U.S.C. § 72(p)(1)(A). Section 72(p)(1)(A) requires taxpayers to include loan proceeds received from a qualified corporate pension plan in their gross income.[1] This section was contained in the Tax Equity and Fiscal Responsibility Act of 1982. It was signed by President Reagan on September 3, 1982, but had an effective date of August 13, 1982.

The Furlongs contested the Commissioner's determination by filing a petition with the United States Tax Court. The Furlongs argued that section 72(p)(1)(A) was unconstitutional under the Due Process clause of the Fifth Amendment because it required them to include loan proceeds as gross income on their tax return—loan proceeds received before section 72(p)(1)(A) was enacted. The Tax Court concluded, however, that the retroactive application of section 72(p)(1)(A) did not violate the Furlongs' constitutional rights. The Furlongs now appeal.

### Discussion

Federal courts have consistently upheld retroactive tax provisions against due pro-

cess challenges. *See, e.g., United States v. Hemme,* 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); *United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981); *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); *Estate of Ekins v. Commissioner,* 797 F.2d 481 (7th Cir.1986).

In fact, just this term, the Supreme Court rejected yet another due process challenge to a retroactive tax provision. *United States v. Carlton,* ___ U.S. ___, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). In that case, Jerry Carlton was the executor of the will of Willametta K. Day. Day died on September 29, 1985. Her estate tax was due on December 29, 1986 (Carlton had obtained a six month filing extension). A statute enacted in 1986, 26 U.S.C. § 2057(b), "granted a deduction for half the proceeds of 'any sale of employer securities by the executor of an estate' to 'an employee stock ownership plan.'" *Id.* at ___, 114 S.Ct. at 2020. In order to qualify for a section 2057 deduction, the sale of securities had to occur before the date the estate tax return was required to be filed.

Carlton sought to avail Day's estate of the section 2057 deduction. On December 10, 1986, he used estate funds to purchase 1.5 million shares of MCI Communications Corporation stock for $11,206,000. Two days later, he sold the stock to the MCI employee stock ownership plan ("ESOP") for $10,575,000. When Carlton filed Day's estate tax return, he claimed a deduction under section 2057 for half the proceeds of the sale of stock to the MCI ESOP, a total of $5,287,000.

On December 22, 1987, section 2057 was amended. The amendment required stocks sold to an ESOP to have been "directly owned" by the decedent "immediately before death" for the deduction to apply. *Id.* at ___, 114 S.Ct. at 2021. The amendment was made retroactive to October 22, 1986, the date section 2057 was originally enacted. The IRS subsequently disallowed the deduction Carlton claimed under section 2057 because Day had not owned the MCI stock

---

**1.** Section 72(p)(1)(A) provides as follows: "Loans. If during any taxable year a participant or beneficiary receives (directly or indirectly) any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan."

before her death. Carlton challenged the IRS's determination, arguing that retroactive application of the amendment violated the Due Process Clause of the Fifth Amendment. The Supreme Court rejected Carlton's argument.

The Court noted that its earlier cases had indicated that a retroactive tax provision violates the Due Process Clause when " 'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' " *Id.* at ——, 114 S.Ct. at 2022 (citation omitted). The Court then determined that the "harsh and oppressive" standard is the same as " 'the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy." *Id.* (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)). According to the Court, retroactive tax provisions are to be judged by the same standard that applies to other retroactive economic legislation. Thus, retroactive tax provisions will be upheld if they are " 'supported by a legitimate legislative purpose furthered by rational means....' " *Carlton,* —— U.S. at ——, 114 S.Ct. at 2022 (citation omitted).

The Court found that Congress' purpose in amending section 2057 was "neither illegitimate nor arbitrary." *Id.* at ——, 114 S.Ct. at 2023. "Congress acted to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss." *Id.* The Court also pointed out that "Congress acted promptly and established only a modest period of retroactivity."

The Court indicated, however, that a rational basis review may not be appropriate where a "wholly new tax" is given retroactive application. Under those circumstances, a taxpayer's due process rights may be implicated. *Id.* at ——, 114 S.Ct. at 2024 (citing *Blodgett v. Holden,* 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (invalidating retro-

activity of the nation's first gift tax); *Untermyer v. Anderson,* 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928) (same)). The Court also stated that an excessive period of retroactivity may run afoul of the Due Process Clause.[2] *Id.* (citing *Nichols v. Coolidge,* 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) (declaring unconstitutional a "novel development in the estate tax which embraced a transfer that occurred 12 years earlier")).

*Wholly New Tax*

■ The Furlongs argue that section 72(p)(1)(A) is a "wholly new tax." According to the Furlongs, "bonafide loans have been excluded from income taxation to the borrower since the inception of the federal income tax system." Thus, the Furlongs contend that section 72(p)(1)(A), which provides for taxation of loans received from a qualified corporate pension plan, constitutes a "wholly new tax."

Despite the Furlongs' contention to the contrary, section 72(p)(1) is not a "wholly new tax." It is part of the larger income tax code, which has existed since the beginning of this century. Moreover, at the time Ralph Furlong borrowed from the pension plan, it was reasonably foreseeable that the proceeds of that loan would be subject to tax. *See Wiggins v. Commissioner,* 904 F.2d 311, 314 (5th Cir.1990) ("Retroactive application has been held unconstitutional only in situations in which a statute imposed a wholly new tax, which could not reasonably have been anticipated by the taxpayer at the time of the transaction.").

Congress foreshadowed the enactment of section 72(p)(1)(A) by passing two provisions which provide for the taxation of certain loan proceeds. For instance, 26 U.S.C. § 408(e)(3),[3] which was enacted as part of the Employee Retirement Income Security Act of 1974 ("ERISA"), provides that if the owner of an individual retirement annuity contract borrows against the contract, the entire

---

**2.** In this case, the period of retroactivity is quiet limited, less than one month.

**3.** Section 408(e)(3) provides as follows: "Effect of borrowing on annuity contract. If during any taxable year the owner of an individual retirement annuity borrows any money under or by

use of such contract, the contract ceases to be an individual retirement annuity as of the first day of such taxable year. Such owner shall include in gross income for such year an amount equal to the fair market value of such contract as of such first day."

fair market value of the contract is includable in the taxpayer's gross income for the year in which the loan was received. *See Griswold v. Commissioner,* 85 T.C. 869, 1985 WL 15417 (1985). In 1981, Congress also passed a provision that counted loan proceeds received (by certain employees) from non-corporate pension plans as distributions includable in the gross income of the recipient. *See* 26 U.S.C. § 72(m)(8). That section was replaced by section 72(p).

Also, the legislative activity surrounding the enactment of section 72(p)(1)(A) provided reasonable notice that loans from qualified corporate pension plans were about to be subject to taxation. The Senate Finance Committee Report discussing the proposed new section 72(p)(1)(A) was issued on July 12, 1982, more than a month before Furlong borrowed the $99,000 from his pension plan. *See* S.Rep. No. 494, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 781. That report indicated that the effective date of the new section was to be July 1, 1982. *Id.* at 322, 1982 U.S.C.C.A.N. at 1062. The House bill did not contain a similar provision. *See* H.R.Conf.Rep. No. 760, 97th Cong., 2d Sess. (1982) at 618, *reprinted in* 1982 U.S.C.C.A.N. 1190, 1390. However, the House Conference Report issued on August 17, 1982 indicated that the House/Senate Conference Committee had agreed to accept the Senate's proposed section 72(p)(1)(A) with a few minor changes. *Id.* at 619–620, 1982 U.S.C.C.A.N. 1391–1392. Most importantly, the final form of section 72(p)(1)(A) was passed by both houses of Congress on August 19, 1982, six days *before* Furlong completed the loan transaction. *See* 1982 U.S.C.C.A.N. 781.

Given these circumstances, we conclude that, as of August 25, 1982, the enactment of section 72(p)(1)(A) was reasonably foreseeable and was not a "wholly new tax."

*Legitimate Legislative Purpose Furthered by Rational Means*

■ Finally, we must determine whether there was *some* possible legitimate purpose for applying section 72(p)(1)(A) retroactively. *See Carlton,* —— U.S. at ——, 114 S.Ct. at 2025 (O'Connor, J., concurring in the judgment); *cf. FCC v. Beach Comm., Inc.,* ——

U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (emphasis added).

"Retroactive application of revenue measures is rationally related to the legitimate governmental purpose of raising revenue." *Carlton,* —— U.S. at ——, 114 S.Ct. at 2025 (O'Connor, J., concurring in the judgment). Tax laws must often be applied retroactively as "a practical matter to prevent the revenue loss that would result if taxpayers, aware of a likely impending change in the law, were permitted to order their affairs freely to avoid the effect of the change." *Fein v. United States,* 730 F.2d 1211, 1212 (8th Cir.), *cert. denied,* 469 U.S. 858, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984). Consequently, we conclude that there was a possible legitimate legislative purpose for applying section 72(p)(A)(1) retroactively.

Also, Congress actually articulated a legitimate purpose for passing section 72(p)(1)(A). According to the Senate Report, that section was included in the Senate Bill because the committee was:

> concerned that widespread use of loans from tax-qualified plans and tax-sheltered annuities diminishes retirement savings. Accordingly, the committee concluded that restrictions on loans and pledges should be applied to all plan participants.

S.Rep. No. 494, 97th Cong., 2d Sess. (1982) at 319–320, *reprinted in* 1982 U.S.C.C.A.N. 781, 1060. There is no doubt that protecting the retirement savings of workers is a legitimate legislative purpose. Neither can there be any doubt that Congress chose a rational means for achieving its legitimate purposes. The retroactive application of section 72(p)(1)(A) rationally serves Congress' legitimate interest in raising revenue and protecting workers' retirement savings.

### Conclusion

We are not without sympathy for the plight of ordinary taxpayers who legitimately attempt to take advantage of a nontaxable transaction only to have it retroactively treated as taxable. Nevertheless, because we must conclude that the retroactive application of section 72(p)(1)(A), for less than one month, is rationally related to a legitimate legislative purpose, we AFFIRM the decision of the Tax Court.