T.C. Memo. 2010-186

UNITED STATES TAX COURT

KWAME OWUSU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5389-08.                    Filed August 23, 2010.

Kwame Owusu, <u>pro</u> <u>se</u>.

<u>Wendy D. Gardner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency of $962 and an addition to tax under section 6651(a)(1) of $145 in petitioner's 2005 Federal income tax.[1]  Petitioner subsequently

---

[1]All section references are to the Internal Revenue Code of 1986, as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

averred in an amended petition that he erroneously reported as gross income on his 2005 Federal income tax return a $9,627 distribution from a qualified pension plan. After a concession,[2] the issues for decision are: (1) Whether petitioner must include in income the $9,627 balance of certain loans from a qualified plan as a deemed distribution under section 72(p); (2) whether petitioner is liable for the 10-percent additional tax under section 72(t) on a deemed distribution arising from the foregoing loan balance; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file his 2005 return.

## FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated by this reference. At the time he filed the petition, petitioner resided in New Jersey.

Before 2005 petitioner was employed as a senior actuary with the New York State Department of Insurance. In 1993 petitioner commenced participation in the New York State and Local Retirement System (NYSLRS), and by March 1998 his contribution balance had reached $4,482. At that time petitioner requested a loan from the NYSLRS. Under NYSLRS rules petitioner was allowed to borrow up to 75 percent of his contribution balance.

---

[2]Respondent conceded that $567 of wages reported on a Form W-2, Wage and Tax Statement, do not constitute income to petitioner.

Petitioner requested a loan in the maximum allowable amount, and after reduction by a $15 service charge he was granted a loan of $3,346. The NYSLRS required repayment within 5 years. Petitioner obtained additional loans from the NYSLRS in each subsequent year, through 2004. The amounts of the NYSLRS loans to petitioner were as follows:

| Date of Loan | Amount |
|---|---|
| Mar. 31, 1998 | $3,361 |
| Mar. 31, 1999 | 1,581 |
| Apr. 6, 2000 | 2,207 |
| Apr. 6, 2001 | 2,402 |
| Apr. 8, 2002 | 2,755 |
| Apr. 8, 2003 | 3,162 |
| Nov. 29, 2004 | 2,941 |

Before 2004 the NYSLRS did not permit a participant to hold multiple loans from the plan. Therefore, each time petitioner requested a new loan, the balance of his previous loans was consolidated with his new loan. As a result, until 2004 petitioner had only one loan from the NYSLRS at any one time, though the balance of the loan increased with each additional amount petitioner requested. Each time he took out a new loan and refinanced the old loan, the consolidated loan extended the repayment period to 5 years from the inception of the new loan. The NYSLRS changed its policy with respect to multiple loans at some point after petitioner obtained the 2003 loan. As a result,

the loan made to petitioner in 2004 was not consolidated with his previous loans.

Petitioner elected to repay his loans through payroll deductions. After taking into account the payroll deduction payments, the outstanding loan balances on his consolidated loan after each new loan were as follows:

| Date | Outstanding Loan Balance |
|------|--------------------------|
| Mar. 31, 1998 | $3,361 |
| Mar. 31, 1999 | 4,683 |
| Apr. 6, 2000 | 5,793 |
| Apr. 6, 2001 | 7,146 |
| Apr. 8, 2002 | 8,613 |
| Apr. 8, 2003 | [1]10,228 |

[1]The $3,162 loan by the plan to petitioner on Apr. 8, 2003, caused his outstanding loan balance to reach $10,228. The NYSLRS took the position that the $228 excess over $10,000 was a taxable distribution. The NYSLRS consequently issued to petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reflecting a $228 taxable distribution in 2003.

At the time petitioner took out the 2004 loan his balance on the 1998-2003 borrowings was $7,058. Taking into account the 2004 loan, petitioner's outstanding loan balance in November 2004 was $9,999.

As of the end of December 2004, petitioner was treated by his employer as being in "suspended without pay" status. Petitioner ceased receiving paychecks from the New York State Department of Insurance, and as a result, no further payroll

deductions were made with respect to petitioner's loans and no repayments in any form were made after December 2004. However, the NYSLRS' records erroneously reflected that petitioner made three further payroll deduction payments during January and February 2005. When no payment had been received by May 31, 2005, the NYSLRS sent petitioner a letter giving him until June 30, 2005, to make a payment. The letter stated that if no payment were received by June 30, 2005, the NYSLRS would consider petitioner's loans in default and the entire amount of the outstanding loans, less any amount previously reported, would be reported to the Internal Revenue Service as a distribution from a qualified plan. Petitioner did not make any payment in response to the letter.

When petitioner made no payments by June 30, 2005, the NYSLRS treated the loans as deemed distributions and issued to petitioner two Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2005, one for the 1998-2003 consolidated loan and one for the 2004 loan. The former reported a gross distribution amount of $6,792, consisting of a taxable amount of $6,693 and a nontaxable amount of $99. The latter reported a

gross distribution of $2,977, consisting of a taxable amount of $2,933 and a nontaxable amount of $43.[3]

Petitioner was under the age of 55 during 2005.

In December 2005 the NYSLRS discovered that petitioner's loans had been credited with three payments through payroll deductions in January and February 2005 even though no paychecks had been issued to petitioner during those periods. The NYSLRS reversed these payments in its records but did not issue petitioner corrected Forms 1099-R for 2005 reflecting deemed distributions of the higher loan balance that resulted.[4]

Petitioner filed his 2005 return on July 6, 2006. Petitioner did not request an extension of time to file his 2005 return. Petitioner reported gross pension income of $9,769 and taxable pension income of $9,627 but did not report a 10-percent additional tax under section 72(t). On December 3, 2007, respondent issued petitioner a notice of deficiency which determined a deficiency of $962 as a result of petitioner's failure to report the 10-percent additional tax under section

---

[3]The nontaxable amounts presumably reflect that a portion of the 1998-2003 consolidated loan had been treated as taxable in 2003. See supra p. 4, table note 1.

[4]Because the Forms 1099-R issued by the NYSLRS erroneously reflected loan payments that had not occurred, the Forms 1099-R understated the gross and taxable deemed distributions to petitioner in 2005. Respondent has not sought to amend his answer to assert that petitioner had larger deemed distributions than those reflected in the Forms 1099-R.

72(t) and an addition to tax under section 6651(a)(1) for failure to timely file the return.[5]  Petitioner filed a timely petition with this Court.  The Court allowed petitioner to amend his petition to include the claim that the $9,627 petitioner reported as a taxable distribution on his 2005 return was not taxable.

OPINION

Respondent argues that petitioner bears the burden of proof and that the burden has not shifted under section 7491(a).  Since we decide this case on the preponderance of the evidence, the allocation of the burden of proof does not affect the outcome and need not be decided.  See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008); see also Blodgett v. Commissioner, 394 F.3d 1030 (8th Cir. 2005), affg. T.C. Memo. 2003-212.

1.  Treatment of Petitioner's Loans as Distributions

A distribution from a qualified plan such as petitioner's pension plan is generally includable in income of the distributee in the year of distribution.[6]  Sec. 402(a).  If a participant or beneficiary of a qualified plan receives a loan from the plan, that amount is treated as a distribution in the year received, unless:  (1) The loan is evidenced by a legally enforceable

---

[5]Respondent assessed the $2,054 tax reported as due on the return on July 31, 2006, and erroneously assessed the $962 deficiency on Aug. 4, 2008.  Respondent abated the premature assessment on Jan. 5, 2009.

[6]Respondent concedes that petitioner's pension plan is a qualified plan within the meaning of secs. 401(a) and 402(a).

- 8 -

agreement, sec. 1.72(p)-1, Q&A-3, Income Tax Regs.; (2) the amount does not exceed a specified maximum amount, sec. 72(p)(2)(A); (3) the loan is to be repaid within 5 years, unless it is a home loan, sec. 72(p)(2)(B); and (4) except as provided in regulations, the loan has substantially level amortization over the term of the loan with payments not less frequently than quarterly, sec. 72(p)(2)(C).  If a plan fails to satisfy these requirements, a deemed distribution will occur at the first time those requirements are not satisfied, either in form or in operation.  Sec. 1.72(p)-1, Q&A-4(a), Income Tax. Regs.

Respondent concedes that the loans to petitioner from the NYSLRS plan satisfied the foregoing requirements when they were made and through the end of 2004, but he contends that the loans failed to meet the level amortization requirement when petitioner ceased making repayments in 2005.

If a loan initially satisfies all four requirements, but one or more installment payments is not made when due in accordance with the terms of the loan, the failure to make such payments violates the level amortization requirement.  Therefore, a deemed distribution occurs at the time of the failure.  Sec. 1.72(p)-1, Q&A-10(a), Income Tax Regs.  The amount of the deemed distribution equals the entire outstanding balance of the loan at the time of the failure to make the required payment.  Sec. 1.72(p)-1, Q&A-10(b), Income Tax Regs.  However, the plan

administrator may grant the participant a cure period.  If the administrator does so, section 72(p)(2)(C) is not considered violated until the last day of the cure period.  Sec. 1.72(p)-1, Q&A-10(a), Income Tax Regs.  The cure period may not extend past the last day of the calendar quarter following the calendar quarter in which the required installment payment was due.  Id.

When petitioner failed to make payments on his loans during the first quarter of 2005, the loans ceased to satisfy the level amortization requirement.  As permitted by the regulations, the NYSLRS gave petitioner a cure period through June 30, 2005; i.e., the last day of the quarter following the quarter in which petitioner defaulted.  Petitioner concedes that he made no payments with respect to his loans after he was placed in suspended without pay status by his employer in December 2004.[7]

---

[7]Petitioner argues that taxation in his case is unconstitutional because sec. 72(p) permits respondent to tax an individual on notional or perceived income rather than actual income.  Petitioner is mistaken.  The amounts contributed to petitioner's qualified plan were compensation for services and would have been taxable when earned if not for the congressional decision to defer taxation on contributions to retirement plans in order to encourage retirement savings.  Congress may constitutionally impose a tax on loans from retirement plans in furtherance of the goal of encouraging retirement savings.  See Furlong v. Commissioner, 36 F.3d 25, 28 (7th Cir. 1994), affg. T.C. Memo. 1993-191.

Petitioner's second argument is that he was wrongfully terminated from his employment, causing his payments on his loans through payroll deductions to cease, and that his former employer must therefore be liable for any tax attributable to a deemed distribution from petitioner's qualified plan.  This argument is without merit.

We accordingly hold that petitioner's failure to comply with the repayment terms for his loans in 2005 caused a deemed distribution from the plan under section 72(p).  Consequently, we reject petitioner's contention that he erroneously reported a $9,627 pension plan distribution in gross income for 2005.

2.  Section 72(t)

When a distribution is made from a qualified retirement plan before the distributee is 59-1/2 years old, section 72(t) imposes an additional 10-percent tax on the distribution.  The 10-percent tax applies when the distribution is a deemed distribution under section 72(p).  Sec. 1.72(p)-1, Q&A-11(b), Income Tax Regs.  The 10-percent additional tax does not apply to distributions from plans other than individual retirement plans if one of several exceptions are met, including:  (1) Distributions made on the death or disability of the participant, sec. 72(t)(2)(A)(ii) and (iii); (2) distributions that are part of a series of substantially equal periodic payments over the life of the participant or the joint lives of the participant and the beneficiary, sec. 72(t)(2)(A)(iv); (3) distributions after separation from service, if the separation occurred during or after the calendar year in which the participant reached age 55, sec. 72(t)(2)(A)(v); (4) certain distributions by employee stock ownership plans of dividends on employer's securities, sec. 72(t)(2)(A)(vi); (5) payments made on account of a levy under

section 6331, sec. 72(t)(2)(A)(vii); (6) distributions not exceeding deductible medical expenses, sec. 72(t)(2)(B); (7) distributions to a nonparticipant under a qualified domestic relations order, sec. 72(t)(2)(C); and (8) certain distributions to individuals called to active duty, sec. 72(t)(2)(G).

Petitioner has not claimed that any of these exceptions applies to him, and the preponderance of the evidence shows that none does. The evidence establishes that the distribution was a deemed distribution as a result of petitioner's default on loans from his pension plan. It was therefore not prompted by petitioner's death or disability, was not made under a qualified domestic relations order, was not made on account of a levy under section 6331, was not made to an individual called to active duty, and was not a distribution of dividends on an employer's securities by an employee stock ownership plan. Further, the deemed distribution occurred only once; it was therefore not part of a series of substantially equal periodic payments over the life of petitioner. There is also no evidence in the record that petitioner had any deductible medical expenses in 2005. Finally, the exception exempting a taxpayer from the 10-percent additional tax if the distribution occurred after separation from service if the separation occurred during or after the calendar year in which the taxpayer reached age 55 does not apply because the parties stipulated that petitioner was younger than 55 in 2005.

Accordingly, petitioner is liable for the 10-percent additional tax under section 72(t).

3.  Section 6651(a)(1) Addition to Tax

Under section 7491(c), respondent has the burden of production with respect to petitioner's liability for the section 6651(a)(1) addition to tax. In order to meet that burden, respondent must offer sufficient evidence to indicate that it is appropriate to impose the addition. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent meets his burden of production, petitioner bears the burden of proving error in the determination, including evidence of reasonable cause or other exculpatory factors. See id. at 446-447.

Section 6651(a)(1) provides for an addition to tax for a taxpayer's failure to file a required return on or before the due date, including extensions. Because petitioner admits that his 2005 return was due on April 15, 2006, that he did not request an extension, and that he filed his return on July 6, 2006, respondent has met his burden of production under section 7491(c).

Petitioner testified at trial that he had instructed his accountant to request an extension of time to file his 2005 return. Petitioner stated he had done so instead of filing his return by April 15, 2006, because he had received an erroneous Form W-2, Wage and Tax Statement, and was attempting to get the

error corrected before filing.  Petitioner stated that when he discovered that his accountant had not requested an extension, petitioner filed his 2005 return as soon as he could.  Even if petitioner believed that his accountant had requested an extension on his behalf, his reliance on the accountant would not constitute reasonable cause so as to avoid a section 6651(a)(1) addition.  Reliance on an agent is not reasonable cause for late filing of a tax return.  United States v. Boyle, 469 U.S. 241, 252 (1985).  The duty to timely file a return is not delegable to an accountant, and reliance on an accountant does not provide reasonable cause for petitioner's failure to timely file his return.  See id.  Accordingly, petitioner is liable for the addition to tax under section 6651(a)(1).

To reflect the foregoing,

Decision will be entered

under Rule 155.